Scott E. WILSON, Plaintiff,

v.

Lt. General Emmett H. WALKER, Jr., et al., Defendants.

No. 83–1746C(2).

United States District Court, E.D. Missouri, E.D.

Dec. 26, 1984.

---

Bernard J. Coogan, St. Louis, Mo., for plaintiff.

Bruce White, Asst. U.S. Atty., St. Louis, Mo., for defendants.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court on defendants' motion to dismiss or in the alternative for summary judgment and memorandum in support thereof. Plaintiff has filed a memorandum in opposition to the motion and defendants have filed a reply thereto. Argument was had on the motion on May 11, 1984.

The basis of defendants' motion to dismiss is the alleged failure of plaintiffs to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). In the alternative defendants move for summary judgment. Because the Court finds it necessary to refer to matters outside the pleadings, this motion will be treated as one for summary judgment. When evaluating a motion for summary judgment, the Court must, of course, view the facts in the light most favorable to the party opposing the motion, giving such party benefit of all reasonable inferences to be drawn from facts. *Portis v. Folk Construction Company, Inc.*, 694 F.2d 520, 522 (8th Cir.1982). "Summary judgment is an extreme remedy, and a motion for summary judgment should not be granted unless it is clear beyond controversy that the moving party is entitled to judgment as a matter of law." *U.S. v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978). *See also Bellflower v. Pennise*, 548 F.2d 776, 777 (8th Cir.1977).

This case arises out of plaintiff's reassignment from a flying to non-flying position while a member of the Air National Guard (ANG) assigned to serve in the Missouri Air National Guard (MANG). Plaintiff alleges that he enlisted in the ANG on September 2, 1971, was commissioned an officer in the reserve of the Air Force on April 14, 1972, and earned career flying status on June 5, 1973. Effective May 30, 1978, plaintiff was assigned to serve in the MANG.[1] During his period of assignment in the MANG plaintiff served in several jobs in the 110th Tactical Fighter Squadron: as a tactical fighter pilot, as a standardization and evaluation flight examiner, as a flight examiner and as operations training officer, each of which were consistent with his military aeronautical rating during that period.

---

**1.** The Air National Guard has a complicated state and federal character. For a brief discussion of this character see *Johnson v. Powell*, 414 F.2d 1060 (5th Cir.1969).

Plaintiff alleges that his difficulties began with his resignation from full time Civil Service as an instructor pilot with the MANG in October, 1981. Plaintiff remained a commissioned officer in the Air Force Reserve and in a federally recognized status as a member of the MANG. Certain actions taken by plaintiff[2] prompted defendant Lt. Col. James H. Renschen to request plaintiff's resignation. Effective October 26, 1982, upon his refusal to resign, plaintiff was reassigned to a position not involving flying. In December of 1982 an investigation into the matter was requested by plaintiff and was conducted by Ehrhardt H. Lange, Colonel in the MANG and Deputy Chief of Staff. Lange concluded that removal from flying assignments was "probably justified" and that Wilson's "problem is one of attitude and particularly in his defiance of command." *Exhibit 1 to Defendants' Motion to Dismiss*, tab 13.

The relief plaintiff seeks[3] was stated succinctly by plaintiff's attorney at oral argument: "[w]e can't ask this Court to undertake the decisions of the Air Force in determining whether Captain Wilson is, in fact, a proper pilot, but merely ask them to follow their own procedures in having taken him off flying status." *Transcript* at 35–36. The procedures plaintiff refers to are contained in Air Force Regulation 35–13 (AFR 35–13), which sets forth with specificity procedures for actions affecting flying status. Plaintiff claims that, rather than providing him with AFR 35–13 procedures, his superiors merely reassigned him to a non-flying job with full knowledge that after five years of not flying plaintiff would lose his aeronautical rating, *Id.* at 38. Thus, he contends that they circumvented the appropriate procedures to

achieve their result. *Id.* at 25. He contends that this failure to follow AFR 35–13 constitutes a violation of plaintiff's due process rights. *Id.* at 27–28. However, plaintiff admitted in oral argument that where one is transferred to a non-flying position without taking away his flying status, AFR 35–13 procedures are unnecessary. In fact, plaintiff stated that such procedures under those circumstances would be a "misuse". *Transcript* at 39–41. Viewing all of these allegations as a whole, the Court is of the opinion that the gravaman of plaintiff's complaint is that he has been deprived of a property interest in his flying status without due process of law.

■ Initially it must be noted that to the extent plaintiff is requesting damages from his superior officers for alleged deprivations of his constitutional rights said action must be dismissed. "[E]nlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (footnote omitted). Plaintiff, however, also asks this Court to order his superiors to follow AFR 35–13 procedures, or some other procedures which would comport with the requirements in his case. Thus the Court must address the merits of his due process claim.

■ Essential to a claim that one has been deprived of a property interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution is establishing that which one has been deprived of is a protected property interest. Here plaintiff contends that he

**2.** According to the report of Ehrhardt H. Lange, Colonel in MANG and Deputy Chief of Staff, there were two incidents which precipitated Colonel Renschen's actions. In the first plaintiff decided to remain overnight rather than to return to St. Louis in accordance with the flight plan and his orders. In the second plaintiff followed an unauthorized flight schedule when returning from England to St. Louis. The report indicates that in addition to these incidents, "there were many other instances where Cap-

tain Wilson defied authority. In fact his defiance of authority I would consider to be the primary cause of the actions taken." *Exhibit 1 to Defendant's Motion to Dismiss*, Tab 13 at p. 2.

**3.** The Court was uncertain what plaintiff was complaining of in his complaint and what relief he was seeking. At oral argument plaintiff attempted to clarify this for the Court.

**558**

has been deprived of his flying status by virtue of the fact that if he remains in non-flying jobs for five years he will lose his flying status. *Transcript* at 38. Thus the issue which this Court must address is whether or not plaintiff has a property interest in his flying status.

 "A property right involves more than a hope, or unilateral expectation of continued service." *Ampleman v. Schlesinger*, 534 F.2d 825, 826 (8th Cir.1976). "To have a property interest in a benefit a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Thus, it is not enough that plaintiff wanted to remain in a flying job or that he expected to stay in a flying job. There must be a showing of "interests that are secured by 'existing rules or understandings.' ... A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim for entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sinderman*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). *See also Ampleman, supra.* The record is devoid of any such rules or understandings. There is no evidence that the parties entered into a contract, either express or implied, that would allow plaintiff to remain in a flying job unless transferred to a non-flying job following AFR 35–13 procedures. There is no evidence of any statute providing for said procedures; nor does AFR 35–13 create any such entitlement. In fact, AFR 35–13, subsection 3–16 clearly anticipates that persons with flying status will at times be transferred to non-flying jobs.[4] Nowhere in AFR 35–13 can it be said that a property interest was created. Accordingly, because there is no property interest of which plaintiff can be said

to have been deprived, there is no genuine issue as to any material fact and defendants are entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 56.

---

**4.** AFR 35–13, subsection 3–16, reads as follows: 3–16. Reserve Officers Assigned to Non-rated Duties. If a Reserve officer who occupies a flying position is temporarily reassigned to nonrated duties, but is still considered as a rated asset, the officer's aeronautical orders remain valid for a period not to exceed 5 years from the date of reassignment. EXCEPTION: This does not apply to flight surgeons. See paragraph 2–7c.